# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**217**

**CA 13-01559**

PRESENT: SMITH, J.P., FAHEY, CARNI, SCONIERS, AND VALENTINO, JJ.

---

IN THE MATTER OF THE ESTATE OF NYLA J. GEHR,
DECEASED.
------------------------------------------------
BRANDON A. JONES, PETITIONER-APPELLANT;

MARIAN G. HOEFT, INDIVIDUALLY AND AS EXECUTOR
OF THE ESTATE OF NYLA J. GEHR, DECEASED,
RESPONDENT-RESPONDENT.

MEMORANDUM AND ORDER

---

ERICKSON WEBB SCOLTON & HAJDU, LAKEWOOD (PAUL V. WEBB, JR., OF
COUNSEL), FOR PETITIONER-APPELLANT.

MICHAEL J. RYAN, BUFFALO, AND STEPHEN P. ZANGHI, WESTFIELD, FOR
RESPONDENT-RESPONDENT.

---

Appeal from an order of the Surrogate's Court, Chautauqua County
(Stephen W. Cass, S.), entered February 11, 2013. The order granted
the motion of respondent to dismiss the petition to revoke letters
testamentary.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs, the motion is denied,
the petition is reinstated and the matter is remitted to Surrogate's
Court, Chautauqua County, for further proceedings in accordance with
the following Memorandum: Nyla J. Gehr (decedent) passed away on
October 8, 2012, and was survived by her sister (respondent).
Decedent executed a will on December 17, 2002 (2002 will), which named
respondent as the sole beneficiary and executor. The 2002 will was
admitted to probate on November 2, 2012, and letters testamentary were
issued to respondent.

On November 8, 2012, petitioner sought to admit to probate a will
that decedent purportedly executed on June 6, 2012 (2012 will), which
named petitioner as the sole beneficiary. Petitioner subsequently
filed a petition, dated November 19, 2012, seeking pursuant to SCPA
711 (1) to revoke the letters testamentary issued to respondent on the
ground that the 2012 will was decedent's last will and testament and
therefore should be admitted to probate instead of the 2002 will.
Petitioner attached the affidavits of the two attesting witnesses to
the 2012 will in accordance with SCPA 1406. The attesting witnesses
swore that, on June 6, 2012, they saw decedent sign the 2012 will in
their presence, that they heard decedent declare the document to be
her last will and testament, and that they then signed the document in
the presence of decedent and each other. In a separate affidavit,

petitioner explained that he did not learn of decedent's death until approximately November 2, 2012, due to his absence from the state and, because he was not a person entitled to notice of the proceeding to admit the 2002 will to probate pursuant to SCPA 1403, he had no earlier opportunity to file objections to probate of the 2002 will.

By notice of motion dated November 28, 2012, respondent moved to dismiss the instant petition on the ground that it fails to state a cause of action (see CPLR 3211 [a] [7]; see also SCPA 102). Respondent argued that the 2012 will was a holographic will and therefore could not be admitted to probate. Respondent also filed objections to probate of the 2012 will, alleging, inter alia, that the 2012 will was a forgery, that it was not duly executed or attested, that decedent lacked testamentary capacity, and that the 2012 will was the product of undue influence.

Surrogate's Court determined that it would not accept the affidavits of the two attesting witnesses as a substitute for in-court testimony because objections to probate of the 2012 will had been filed, and because the 2012 will was not executed under the supervision of an attorney and contained no attestation clause. The Surrogate also concluded that the will was handwritten, although it was not a holographic will inasmuch as it was written by someone other than decedent (see EPTL 3-2.2 [a] [2]). The Surrogate further concluded that the 2012 will was not testamentary in character and could not be admitted to probate because the final sentence of the document stated that "[t]he above will, will take place preceding my death," whereas a proper will takes effect upon death (see EPTL 1-2.19 [a]). The Surrogate therefore granted respondent's motion to dismiss the petition.

On appeal, petitioner contends that the Surrogate erred in granting respondent's motion without conducting a hearing. We agree. Petitioner sought to revoke the letters testamentary issued to respondent on the ground that the 2002 will was no longer valid due to the making of the 2012 will (see SCPA 719 [4]), and thus admission of the 2002 will to probate should be vacated. To be entitled to vacatur of probate of the 2002 will, petitioner was required to "demonstrate a substantial basis for [his] contest and a reasonable probability of success through competent evidence that would have probably altered the outcome" of the Surrogate's determination to admit the 2002 will to probate (Matter of American Comm. for Weizmann Inst. of Science v Dunn, 10 NY3d 82, 96). We conclude that petitioner demonstrated a substantial basis for contesting the 2002 will. Execution of a subsequent will revokes a former will if the subsequent will is "so inconsistent with the former will that the two cannot stand together," even in the absence of an express revocation clause in the subsequent will (Matter of Cunnion, 201 NY 123, 126; see EPTL 3-4.1 [a] [1] [A]; Matter of Sheldon, 158 App Div 843, 848; Matter of Moore, 6 Misc 2d 107, 109). Here, the 2002 will named respondent as the sole beneficiary, but the 2012 will named petitioner as the sole beneficiary and purported to dispose of all of decedent's property. We therefore conclude that the provisions of the 2002 will are so inconsistent with those of the 2012 will that, if the Surrogate were

"satisfied with the genuineness of the [2012] will and the validity of its execution" (SCPA 1408 [1]), the 2012 will would revoke the 2002 will. Thus, in this case, whether petitioner had a reasonable probability of successfully vacating probate of the 2002 will was dependent upon whether he could prove, through competent evidence, that the 2012 will was genuine and duly executed and attested (*see* EPTL 3-2.1; *American Comm. for Weizmann Inst. of Science*, 10 NY3d at 96).

Initially, we conclude that the Surrogate properly refused to accept the affidavits of the attesting witnesses as a substitute for their in-court testimony to prove due execution and attestation of the 2012 will because respondent "raise[d] objections thereto" (SCPA 1406 [1] [a]). Furthermore, "for any other reason," the Surrogate may reject out-of-court affidavits and require that the witnesses "be produced and examined" (SCPA 1406 [1] [b]). Here, the Surrogate amply supported his refusal to accept the out-of-court affidavits of the attesting witnesses by noting that the 2012 will was handwritten, was not supervised by an attorney, and contained no attestation clause.

We further conclude, however, that the Surrogate erred in granting, without first conducting a hearing, respondent's motion to dismiss the petition on the ground that the 2012 will was not testamentary in character (*see Matter of Loverme*, 27 AD3d 747, 748). We therefore reverse the order, deny the motion, reinstate the petition, and remit the matter to Surrogate's Court for a hearing pursuant to SCPA 1404, at which the attesting witnesses may be examined and respondent's objections to probate of the 2012 will may be explored. The Surrogate properly noted that a will by its definition must "take effect upon death" (EPTL 1-2.19 [a]). The test to determine whether a document is testamentary is "whether the maker intended the instrument to have no effect until after the maker's death, or whether he intended it to transfer some present interest" (*McCarthy v Pieret*, 281 NY 407, 409, *rearg denied* 282 NY 800 [internal quotation marks omitted]; *see Matter of Wolf*, 38 Misc 3d 564, 568). Here, decedent purportedly stated in the 2012 will that she had made her "final decision" on behalf of her estate, and she labeled the document her "final will." Furthermore, she stated that she was leaving her "entire estate" to petitioner, including "all real estate" and all of her "personal belongings" and "money." Inasmuch as it is unlikely that decedent intended to part with all of her property and possessions at some unspecified time prior to her death—and, indeed, there is no evidence that she did so—we conclude that it is possible that, in writing that the will should "take place preceding [her] death," decedent was attempting to articulate that the 2002 will was no longer valid and that the 2012 will expressed her present intent for disposition of her property upon her death. We therefore conclude that the Surrogate should conduct a hearing before deciding whether to revoke the letters testamentary issued for the 2002 will and to vacate probate of that will.

Entered: May 2, 2014                               Frances E. Cafarell
                                                   Clerk of the Court